# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **CHYNNA CALDWELL**, on behalf of herself and all others similarly situated, | : | Case No:  2:24-cv-2756 |
|  | : |  |
| Plaintiff, | : | Hon. |
|  | : |  |
| v. | : |  |
|  | : | <u>**COMPLAINT AND JURY DEMAND**</u> |
| **SAFELITE FULFILLMENT, INC.,** a corporation, | : |  |
|  | : |  |
| Defendant. | : |  |

## <u>INTRODUCTION</u>

1.      This is an action seeking Court Supervised Notice pursuant to 29 U.S.C. § 216(b) and a Class Action pursuant to Fed. R. Civ. P. 23 by Plaintiff, Chynna Caldwell ("Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant Safelite Fulfillment, Inc. ("Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., The Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq*. ("OMFWSA"), Section 34a of Article II of the Ohio Constitution, and common law.

2.      Defendant Safelite Fulfillment, Inc., "operating under the trade name Safelite AutoGlass[,]" is "[t]he auto glass division of Safelite [Group]."[1] Defendant holds itself out to be "the largest auto glass repair and replacement organization in the U.S.," and claims that its services are "available to 96% of drivers in all 50 states."[2]

---

[1] *See* https://www.safelite.com/about-safelite/safelite-autoglass-companies (last visited Apr. 22, 2024).
[2] *Id*.

1

3.     In providing the aforementioned services, Defendant employed Customer Service Representatives with job titles that include, but are not limited to, Customer Service Representative, Customer Advocate, Customer Support Advocate, and Field Service Representative (collectively referred to herein as "CSRs") in brick-and-mortar call centers and in remote call center settings across the United States, including, but not limited to, Ohio. Defendant heavily relied on CSRs to, among other things, field calls from Defendant's customers and auto shops.[3]

4.     Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone and electronic customer service.

5.     The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

6.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

7.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

---

[3] *See* https://www.safelite.com/careers/customer-service-representative-jobs (last visited Apr. 22, 2024).
[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Apr. 22, 2024).

8.      Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked, and in non-overtime workweeks, for regular hours.

9.      More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system and when returning from their meal periods; closing all work applications and systems they used during their shift; disconnecting from Defendant's server; and shutting down their computer after their last fielded call for the shift concluded and after clocking out of Defendant's timekeeping system.

10.     Plaintiff seeks a declaration that her rights, and the rights of the Putative Plaintiffs and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

11.     At the earliest time possible, Plaintiff will request that Court-authorized notice of this action be sent, pursuant to 29 U.S.C. § 216(b), to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

13.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

14.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

15.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Ohio, employs individuals within the state of Ohio, is registered with the Ohio Secretary of State, and maintains its principal place of business in the state of Ohio.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs CSRs in this District, conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## **PARTIES**

18.      Plaintiff Chynna Caldwell is a resident of Columbus, Ohio and worked for Defendant as an hourly, non-exempt CSR in Defendant's Columbus, Ohio brick-and-mortar call center from approximately June 10, 2022 through July 2022 and remotely in Florida from approximately July 2022 through November 2023. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $18.00 per hour. Plaintiff signed a consent to join this FLSA action, which is attached as **Exhibit A**.

4

19.     During the past three years, additional Opt-in Plaintiffs were or are employed as CSRs and their consent forms will also be filed in this case.

20.     Defendant Safelite Fulfillment, Inc. is a Delaware corporation (File No. 3627154), registered with the Ohio Secretary of State (Entity No. 1415369), and maintains its principal place of business in Columbus, Ohio. Defendant's registered agent for service of process is listed as Corporation Service Company, 1160 Dublin Road, Suite 400. Columbus, Ohio 43215.

## GENERAL ALLEGATIONS

21.     Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

22.     Defendant maintained documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

23.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

24.     Plaintiff performed under her agreement with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff answered incoming phone calls and emails from customers, policyholders, insurance agents, and/or auto glass shops; scheduled appointments for Defendant's customers; assisted technicians with work order discrepancies; verified work orders, customer deductibles, and insurance coverage information; and responded to emails regarding existing and scheduled appointments. Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

25.     Defendant paid its CSRs at varying hourly rates.

26. Defendant's CSRs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

27. There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

28. Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same, and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

29. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

30. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

31. Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to load and log into all of their essential work-related computer programs and applications ***before*** the start of their shifts so they could be prepared to take calls and/or field emails the moment their shifts began.

32. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

33. Defendant's CSRs necessarily had to perform off-the-clock work every shift because Defendant relied exclusively on a web-based timekeeping system to track its CSRs' hours,

6

including Plaintiff's hours, worked. Therefore, Defendant's CSRs were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

34. Defendant enforced its "call ready" policy and required its CSRs to perform off-the-clock through its uniform Attendance Policy set forth in the National Contact Center Handbook; its compensation, timekeeping, and schedule adherence procedures; and the call quality assurance system it used.

35. For instance, Defendant maintained schedule attendance and adherence metrics pursuant to which it monitored the CSRs' clock-in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status. CSRs who failed to comply with Defendant's policies, including the company's Attendance Policy, were subject to a progressive disciplinary system involving the following steps: verbal warning, written warning, final warning, and immediate dismissal. Defendant identified corrective action taken against CSRs on Corrective Action Reports, and CSRs, as well as their supervisor and manager, were required to sign such reports. On March 9, 2023, Plaintiff's supervisor, Tiffany Johnson, identified Plaintiff's "[e]xcessive [t]ardiness" on a Corrective Action Report. The Report noted, among other things, that "[s]hould Ms. Caldwell accrue an additional tardy prior to 12/19/23, she will be subject to further corrective action up to and including immediate dismissal."

36. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

37. Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be "call ready" the moment their meal periods concluded.

38. Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock after their scheduled shift and after clocking out of Defendant's timekeeping system when they followed-up on emails, updated their workloads, closed out of the applications/programs they used during their shift, and shut-down their computer.

39. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

40. The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

41. As a result of the off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately fifteen (15) to twenty (20) minutes of compensation every day.

42. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with its CSRs.

43. Further, Defendant was aware that by relying exclusively on a web-based timekeeping system, some off-the-clock work was bound to occur every day.

44. Indeed, in light of the explicit DOL guidance cited above, and a previously filed lawsuit against Safelite alleging the same and/or substantially similar FLSA violations as those

8

alleged herein[5], there is no conceivable way for Defendant to establish that it acted in good faith.

45.     Despite knowing Plaintiff and all other CSRs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

46.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

47.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

48.     Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

49.     The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) to eight (8) minutes per shift. Specifically, before each shift CSRs were required to undertake the following essential work tasks:

      a.  Turn on or wake up their computer;

      b.  Log into Microsoft Windows using their username and password;

      c.  Secure access to Defendant's server (the virtual private network or "VPN") using a dual authentication process through which the CSR had to obtain a code from their cell phone and enter it into their computer;

---

[5] *See Heaps v. Safelite Sol., LLC et al*, Case No. 2:10 CV 729 (S.D. Ohio Apr. 5, 2011).

    d.   Open Google Chrome;

    e.   Open Microsoft Teams – the application CSRs used to communicate with other employees and supervisors during their shift;

    f.   Open and log into Defendant's Dashboard using a dual authentication process through which the CSR had to obtain a code from their cell phone and enter it into their computer;

    g.   Log into ADP (Defendant's timekeeping application) using a username and password; and

    h.   Clock in.

50.    Defendant's CSRs had to complete this process before the start of their scheduled shifts and before fielding calls/emails. Consequently, the CSRs had to arrive to work approximately five (5) to eight (8) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendant's CSRs were not compensated for all or some of this time because Defendant not only required CSRs to be "call ready" by the start of their scheduled shifts and prohibited CSRs from clocking in more than five (5) minutes before the start of the scheduled shifts, but also relied exclusively on a web-based timekeeping system that Defendant's CSRs could not access unless and until they performed work off-the-clock.

52.    Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

53.    The pre-shift off-the-clock work CSRs performed directly benefited Defendant, and was integral and indispensable to their job duties and responsibilities.

54.     Plaintiff and other CSRs were subject to Defendant's uniform Pre-Shift Off-the-Clock policy and practice that violated the FLSA.

**B. <u>Meal-Period Off-the Clock Work</u>**

55.     Defendant promised its CSRs one unpaid 30-minute meal period each eight (8) hour shift.

56.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

57.     Defendant did not provide CSRs with legitimate bona fide meal periods because it required the CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back into their computer and certain programs/applications (for example, Avaya), and place themselves in a "ready" state so they could resume taking/making calls/emails promptly at the end of their scheduled meal periods.

58.     If CSRs were not logged back into the phone system and ready to take calls and electronic correspondence promptly at the conclusion of their scheduled meal breaks, they were considered "out of adherence" and could be subjected to disciplinary action.

59.     CSRs spent approximately five (5) to six (6) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to

which it failed to pay CSRs for no less than five (5) minutes per day of work performed during their meal periods.

60.     The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

61.     In workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

62.     Defendant's management was aware that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's metrics, compensation and timekeeping policies, and schedule adherence requirements.

63.     Plaintiff and other CSRs were subject to Defendant's uniform Meal-Period Off-the-Clock policy and practice that violated the FLSA.

**C. Post-Shift Off-the Clock Work**

64.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock out the moment they were done fielding their last call for the shift and *before* following up on emails, updating their workloads, closing out of the applications/programs they used during their shift, disconnecting from Defendant's VPN, and shutting down their computer. Defendant's CSRs were required to shut down their computer every shift for security purposes.

12

65.     Plaintiff and other CSRs were not allowed to begin their post-shift off-the-clock work and the shutdown and logout process until they completed their last fielded call.

66.     This resulted in Plaintiff and other CSRs performing anywhere from five (5) to six (6) minutes of off-the-clock work every shift.

67.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

68.     The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

69.     Plaintiff and other CSRs were subject to Defendant's uniform Post-Shift Off-the-Clock policy and practice that violated the FLSA.

**D.  The Off-the-Clock Work Results in Viable "Gap Time" Claims**

70.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

71.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

13

72.     During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

73.     Defendant's uniform Off-the-Clock policies and practices that violated the FLSA resulted in viable "Gap Time" claims.

**E.  Plaintiff's Exemplary Workweeks**

74.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one instance where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies the following earnings statements:

<u>**July 2 – July 8, 2023**</u>

- Plaintiff worked less than 40 hours at a rate of $18.00 per hour and upon information and belief was paid $18.00 for each regular hour worked.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional fifteen (15) to twenty (20) minutes or more at her regular rate of $18.00 for each regular hour.

**Ex. B**, Caldwell 7/2/23 – 7/8/23 Earnings Statement.

<u>**June 18 – June 24, 2023**</u>

- Plaintiff worked more than 40 hours at an overtime rate of $27.00 per hour and upon information and belief was paid $27.00 per hour in overtime.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional fifteen (15) to twenty (20) minutes or more at her overtime rate of $27.00 for each hour worked in excess of 40 in the overtime workweek(s).

**Ex. C**, Caldwell 6/18/23 – 6/24/23 Earnings Statement.

## SIMILARLY SITUATED ALLEGATIONS

75.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who work or have worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "Putative Plaintiffs"). Plaintiff reserves the right to amend this definition if necessary.

76.     Excluded from the definition of the Putative Plaintiffs are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

77.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

78.     Consistent with Defendant's policies and practice, Plaintiff and the Putative Plaintiffs were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

79.     All of the work Plaintiff and the Putative Plaintiffs performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the Putative Plaintiffs performed.

80.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the Putative Plaintiffs for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

81.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiff and the Putative Plaintiffs. This policy and pattern or practice includes, but is not limited to:

      a.   Willfully failing to pay its employees, including Plaintiff and the Putative Plaintiffs, for all regular hours that they worked off-the-clock in non-overtime workweeks;

      b.   Willfully failing to pay its employees, including Plaintiff and the Putative Plaintiffs, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

      c.   Willfully failing to record all of the time that its employees, including Plaintiff and the Putative Plaintiffs, worked for the benefit of Defendant.

82.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

83.    An action for Court Supervised Notice collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

84.    The employment relationships between Defendant and every proposed Putative Plaintiff are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed Putative Plaintiff, to wit: whether the Putative Plaintiffs were 1) required to work uncompensated boot up and log out time; and 2) entitled to their regular hourly wage in non-overtime workweeks and overtime for hours worked over forty (40) in a week.

85.    Plaintiff estimates the Putative Plaintiffs, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

16

86.     Plaintiff and the Putative Plaintiffs were subject to Defendant's uniform Off-the-Clock policy and practices that violated the FLSA.

87.     Plaintiff and the Putative Plaintiffs' claims are based on the same legal theories, namely, Defendant's statutory violations, and proof of Defendant's violations, as well as Defendant's unlawful conduct, will be common across all Putative Plaintiffs.

88.     Plaintiff asserts that at least a strong likelihood exists that she is similarly situated to the Putative Plaintiffs.

89.     The Putative Plaintiffs should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the Putative Plaintiffs, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 OHIO STATE LAW CLASS ACTION ALLEGATIONS

90.      Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendant at any location in Ohio during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Ohio Class"). Plaintiff reserves the right to amend this definition if necessary.

91.     The members of the Rule 23 Ohio Class are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Ohio Class members. Rule 23 Ohio Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

92.     There is a well-defined community of interests among Rule 23 Ohio Class members

and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Ohio Class. These common legal and factual questions, include, but are not limited to, the following:

        a. Whether the pre-shift time Rule 23 Ohio Class members spent on startup and login activities before "clocking in" for each shift is compensable;

        b. Whether the time that Rule 23 Ohio Class members spent on work activities during their lunch break, such as logging back into their computer and programs/applications and clocking in, is compensable;

        c. Whether the post-shift time Rule 23 Ohio Class members spent sending emails, updating their workloads, closing all programs and applications and shutting down their computer after "clocking out" is compensable;

        d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Ohio Class member regular wages or minimum wage for each non-overtime hour worked;

        e. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Ohio Class member overtime compensation for each overtime hour worked; and

        f. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Ohio Class.

93. Plaintiff's claims are typical of those of the Rule 23 Ohio Class in that she and all other Rule 23 Ohio Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Ohio Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Ohio Class members.

94. Plaintiff will fully and adequately protect the interests of the Rule 23 Ohio Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to,

or conflicting with, the interests of the Rule 23 Ohio Class.

95.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

96.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

97.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

98.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

99.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated CSRs who worked for Defendant*
> *at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

100. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

101. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b. Whether the post-shift time Rule 23 Nationwide Class members spent sending emails, updating their workloads, closing all programs and applications and shutting down their computers is compensable time under applicable law;

    c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

102. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

103.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

104.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

105.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

106.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

107.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### FLSA COLLECTIVE ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME

108.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

109.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

110.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

111.    At all times relevant to this action, Plaintiff and the Putative Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

112.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the Putative Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

113.    Plaintiff and other Putative Plaintiffs, by virtue of their job duties and activities actually performed, were all non-exempt employees.

114.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

115.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

116.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

117.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Putative Plaintiffs to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime

workweeks and the federally mandated overtime compensation for all work performed.

118.     The off-the-clock work performed every shift by Plaintiff and the Putative Plaintiffs was an essential part of their jobs and these activities and the time associated with these activities was significant.

119.     In workweeks where Plaintiff and other Putative Plaintiffs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the Putative Plaintiffs' regular hourly rate.

120.     As a result of Defendant's unlawful policies and practices, Plaintiff and the Putative Plaintiffs were deprived of both straight time and overtime wages in violation of the FLSA.

121.     Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the Putative Plaintiffs for all work activities, but did not.

122.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 OHIO CLASS ACTION**
**VIOLATIONS OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**("OMFWSA"), O.R.C. §§ 4111, *et seq*. AND OHIO CONSTITUTION ART. II, § 34a**

123.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

124.    At all times relevant to this action, Defendant was subject to the mandates of the OMFWSA, O.R.C. §§ 4111, *et seq.*, and Section 34a of Article II of the Ohio Constitution.

125.    At all times relevant to this action, Plaintiff and the Rule 23 Ohio Class worked for and were "employees" of Defendant in Ohio and were therefore covered by Section 34a of Article II of the Ohio Constitution and the OMFWSA.

126.    At all times relevant to the action, Defendant was an employer covered by Section 34a of Article II of the Ohio Constitution and the overtime and wage mandates of the OMFWSA, O.R.C. § 4111, *et seq.*

127.    The OMFWSA provides that employees are entitled to a minimum wage, O.R.C. § 4111.02, as well as "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, O.R.C. § 4111.03. *See also* Ohio Const. art. II § 34a.

128.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Rule 23 Ohio Class members to perform pre-, mid-, and post-shift work off-the-clock, every shift, and failed to pay these employees the minimum wage and overtime compensation to which they were entitled under Section 34a of Article II of the Ohio Constitution, Ohio Const. art. II § 34a, and the OMFWSA, O.R.C. §§ 4111.02 and 4111.03, for the work they performed.

129.    By failing to pay Plaintiff and members of the Rule 23 Ohio Class the minimum wage and overtime compensation to which they were entitled for performing the off-the-clock work described herein, Defendant violated Section 34a of Article II of the Ohio Constitution, Ohio Const. art. II § 34a, and the OMFWSA, O.R.C. §§ 4111.02 and 4111.03.

130.    Section 34a of Article of the Ohio Constitution and § 4111.14(A)(3) of the OMFWSA allow an employee who has not been paid minimum wage for all hours worked to bring a civil action to recover "[double] back wages, damages, and the employee's costs and reasonable attorney's fees." O.R.C. § 4111.14(A)(3); *see also* Ohio Const. art. II § 34a.

131.    Pursuant to O.R.C. § 4111.10(A), an employer who fails to pay its employees for all overtime wages outlined in O.R.C. § 4111.03 "is liable to the employee affected for the full amount of the overtime wage rate, less any amount actually paid to the employee by the employer, and for costs and reasonable attorney's fees." O.R.C. § 4111.10(A)

132.    Additionally, § 4111.08 of the OMFWSA requires employers to maintain and preserve payroll records, including "the amount paid each pay period to each employee, the hours worked each day and each work week by the employee." O.R.C. § 4111.08.

133.    Defendant violated the OMFWSA, O.R.C. § 4111.08, by failing to properly maintain accurate records of all hours Plaintiff and the members of the Rule 23 Ohio Class worked each workday and within each workweek.

134.    Defendant's uniform policy and practice, as described above, was willful, intentional, unreasonable, arbitrary, and in bad faith.

135.    As a result, the Rule 23 Ohio Class has and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Ohio Class is entitled to recover double back wages, damages, attorneys' fees plus costs, interest, and other appropriate relief under Section 34a of Article of the Ohio Constitution and the OMFWSA at an amount to be proven at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

138.   Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

139.   For example, Defendant offered to compensate Plaintiff at a minimum of $18.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

140.   Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

141.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $18.00 per hour within the applicable period.

142.   Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

143. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

144. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

145. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

146. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

147. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

148. Plaintiff re-alleges and incorporates all previous paragraphs herein.

149. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

150.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

151.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

152.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant were unjustly enriched.

153.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

154.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

155.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

156.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

157.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

158.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order authorizing Court Supervised Notice pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly customer service representatives who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.    In the event the Defendant seeks to have discovery on the issues of whether the Putative Plaintiffs are similarly situated to Plaintiff, an order tolling the FLSA statute of limitations for the Putative Plaintiffs as of the filing of this Complaint through the end of the *Clark* discovery period;

c.    An Order certifying this action as a class action (for the Rule 23 Ohio Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Ohio state law claims (Count II);

d.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

e.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count IV);

f.    An Order designating the Plaintiff as representative of the Putative Plaintiffs, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

g.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.    An Order declaring Defendant's violations of the FLSA were willful;

i.      An Order declaring Defendant violated Ohio state law for failing to pay Plaintiff and the Rule 23 Ohio Class the minimum wage and overtime compensation to which they were entitled;

j.      An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

l.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the Putative Plaintiffs, the Rule 23 Ohio Class, the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

m.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

n.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o.      An Order awarding such other and further relief as this Court deems appropriate.

Dated: May 22, 2024           Respectfully Submitted,

/s/ Robert E. DeRose
Robert E. DeRose (OH Bar No. 0055214)
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Telephone: 614-221-4221
bderose@barkanmeizlish.com

Jason J. Thompson (*Pro Hac Vice forthcoming*)
Alana A. Karbal (*Pro Hac Vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative Plaintiffs/Class Members*

## JURY DEMAND

Plaintiff, Chynna Caldwell, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 22, 2024                    Respectfully Submitted,

_/s/_ Robert E. DeRose
_One of the Attorneys for Plaintiff and the Putative Plaintiffs/Class Members_